Champlin Refining Company v. Commissioner.
Champlin Ref. Co. v. Commissioner
Docket No. 35813.
United States Tax Court
1943 Tax Ct. Memo LEXIS 143; 2 T.C.M. (CCH) 662; T.C.M. (RIA) 43395; August 23, 1943
*143 Harry O. Glasser, Esq., and Samuel H. Horne, Esq., for the petitioner. E. G. Sievers, Esq., for the respondent. SMITH Supplemental Memorandum Opinion SMITH, Judge: All of the issues presented by this proceeding were settled by a Memorandum Opinion of the Board of Tax Appeals entered December 11, 1939, except that there was reserved for future consideration the question whether the petitioner was entitled to have its tax liability for the period April 1 to December 31, 1920, determined under the provisions of section 328 of the Revenue Act of 1918; in other words, whether it was entitled to special assessment. The present opinion is concerned with only that question. No attempt has as yet been made to offer comparatives. The present question is whether the evidence shows such abnormalities in invested capital and income for the period in question as warrants special assessment. In its brief filed with this Court on July 20, 1943, the petitioner states: The petitioner concedes at the outset, that the Commissioner has correctly computed its invested capital for the year 1920, within the provisions of Section 331 of the Revenue Act of 1918, to be in the total sum of $1,352,881.82. *144 It nevertheless contends that there are such abnormalities in its invested capital, as well as in its income, as warrant the invocation of the relief provision. The abnormal conditions during the year 1920 of which the petitioner complains are listed as follows: (1) the failure of H. H. Champlin, the sole executive officer of the petitioner corporation, to charge or receive any salary during the year 1920; (2) the exclusion of Beggs lease cost to the extent of $382,500.00 from the base for depletion allowance; (3) the failure to penalize any other taxpayer as petitioner was penalized in depletion allowance, as the result of litigation upon title in oil-producing property or properties; (4) The conversion of prior ownership of oil properties into the petitioner corporation, resulted in the petitioner being allowed $39,660.12 in depletion less than that which would have been allowed to such prior owners if they had retained title to said properties; (5) by reason of the provisions of Section 331 of the Revenue Act of 1918, (a) $869,198.05 was excluded from petitioner's invested capital, and (b) $228,129.83, the cost to prior owners in developing the Beggs lease was also *145 excluded from petitioner's invested capital; (6) the location of petitioner's refinery within 17 miles of the Garber Oil Field, with an ample supply of crude oil readily available to petitioner at a nominal cost in transportation charge, created an abnormal operating condition. The Revenue Act of 1918, under the provisions of which the petitioner's tax liability for 1920 must be determined, provided in material part: SEC. 327. That in the following cases the tax shall be determined as provided in section 328: * * * * *
(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate *146 of profit upon a normal invested capital, * * * Under the Memorandum Opinion of the Board of Tax Appeals entered December 11, 1939, the respondent has determined that the petitioner had a net income for the nine-month period in question herein of $588,258.66, an invested capital of $1,352,881.82, an income tax of $42,731.66, and an excess profits tax of $158,942.08. Although the petitioner concedes that the respondent has correctly computed its invested capital for the year 1920 within the provisions of section 331 of the Revenue Act of 1918, it nevertheless contends that since under the operation of section 331 a certain appreciation in value of its assets is excluded from its invested capital, there is an abnormality of invested capital which warrants the invocation of the relief provisions of the Revenue Act of 1918. It also says that because $228,129.83, which the prior owners of the property, H. H. Champlin and his wife, spent in developing the leasehold and deducted as expenses in the years in which the amounts were paid out, it also has an abnormality in invested capital. We are of the opinion that there is no merit in this contention of the petitioner. The relief provisions *147 of the statute were not intended to be applied to defeat the provisions of section 331. The stipulated fair market value of the Beggs lease on the date of incorporation, except for the cloud on its title, was $1,530,000. By reason of the cloud upon its title the fair market value at the date of the incorporation of the petitioner is conceded to be $1,147,500. That is the basis for the allowance for depletion for the taxable period here in question. The petitioner contends that since it is not entitled to deduct depletion upon the $1,530,000 value it therefore has been denied the deduction of as great an amount for depletion as corporations similarly circumstanced. There is no merit in this contention. The petitioner was entitled to deduct depletion upon a value of only $1,147,500. Because it was not entitled to deduct depletion upon a value greater than its fair market value is no ground for the invocation of special assessment. The petitioner also claims an abnormality in its net income by reason of the fact that no salary was paid to its president, H. H. Champlin. Why no salary was paid to him is not clear from the record. Had a salary been paid, a reasonable amount would have *148 been allowed as a deduction. It is entirely possible that H. H. Champlin, who with his wife were the owners of substantially all of the stock of the corporation, deliberately elected to receive no salary. It is in evidence that Champlin, in addition to being president of the petitioner corporation, was also the president of a large bank in Oklahoma and was interested in several different businesses. In the circumstances of the case we do not think that a failure to pay the president a salary is proof that the excess profits tax imposed upon the income of the corporation, without the benefit of the relief provisions, works upon the corporation an exceptional hardship "evidenced by gross disproportion between the tax computed without the benefits of Sections 327 and 328 and the tax computed by reference to the representative corporations specified in Section 328." Finally, the petitioner contends that the location of its refinery within 17 miles of the Garber oil field, with an ample supply of crude oil readily available to petitioner at a nominal cost in transportation charge, created an abnormal operating condition. It is apparent from the record that the large profits of the petitioner *149 for the taxable period here in question were due to refinery operations and not from the production of oil from the Beggs lease. According to the petitioner's own computation $553,042.32 of its net income of $588,258.66 was attributable to the operations of the refinery and only the balance from the production of the Beggs lease and from other sources. Section 327 (d) of the Revenue Act of 1918, above quoted, says that "This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital." No claim is made that there was any abnormality in the computation of the invested capital, so far as it relates to the refinery, nor so far as the income from the refinery is concerned, unless it be that out of the profits from the refinery no amount was paid to the petitioner's president. From a consideration of all of the evidence we reach the conclusion that the petitioner has not shown that it is entitled to have its excess profits tax liability for the nine-months fiscal period ended December 31, 1920, computed under section 328 *150 of the Revenue Act of 1918. Its request for such relief is therefore denied.